**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| DANIEL CARROLL, individually, and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | Honorable: |
| | **COMPLAINT CLASS ACTION** |
| v. | |
| VOLKSWAGEN GROUP OF AMERICA, INC., | **Jury Trial Demanded** |
| Defendant. | |

Plaintiff Daniel Carroll ("Plaintiff"), individually and on behalf of all others similarly situated, allege the following against Volkswagen Group of America, Inc. ("Defendant" or "Volkswagen"), based upon on personal knowledge where applicable, information and belief, and the investigation of counsel.

## I.  SUMMARY OF THE ACTION

1.     On or about September 18, 2015, the United States Environmental Protection Agency sent a Notice of Violation to Volkswagen revealing for the first time that Volkswagen had misrepresented the benefits of the diesel vehicles it sold to thousands of U.S. customers, including those in the Class defined herein, regarding the vehicles' compliance with emissions tests.  The EPA's Notice of Violation concluded:

The United States Environmental Protection Agency (EPA) has investigated and continues to investigate Volkswagen AG, Audi AG, and Volkswagen Group of America (collectively, VW) for compliance with the Clean Air Act (CAA), 42 U.S.C. §§ 740 1-767 1q, and its implementing regulations. As detailed in this Notice of Violation (NOV), the EPA has determined that VW manufactured and installed defeat devices in certain model year 2009 through 2015 diesel light- duty vehicles equipped with 2.0 liter engines. These defeat devices bypass, defeat, or render inoperative elements of the vehicles' emission control system that exist to comply with CAA emission standards. Therefore, VW violated section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B). Additionally, the EPA has determined that, due to the existence of the defeat devices in these vehicles, these vehicles do not conform in all material respects to the vehicle specifications described in the applications for the certificates of conformity that purportedly cover them. Therefore, VW also violated section 203(a)(l ) of the CAA, 42 U.S.C. § 7522(a)( 1 ), by selling, offering for sale, introducing into commerce, delivering for introduction into commerce, or importing these vehicles, or for causing any of the foregoing acts.

Copy attached as Exhibit A and incorporated by reference herein. That same day the California Air Resources Board ("CARB") also sent a letter to Volkswagen addressing the same issues. A copy of CARB letter is attached as Exhibit B and incorporated by reference herein.

2.      As the Los Angeles Times reported that day:

Volkswagen called them "clean diesels," branding them as the fun-to-drive alternatives to hybrids as it dominated the U.S. market for the engine technology.

Turns out the increasingly eco-conscious buyers of the sporty German cars have been unwittingly pumping smog into the air — because of software VW installed to cheat on U.S. emissions tests.

The world's largest automaker has admitted selling 482,000 such diesels since 2009, California and U.S. regulators announced Friday.…VW's software trick allows the cars to emit up to 40 times the legally allowed amount of nitrogen oxide, environmental officials said.

* * *

Many owners of VW diesels — who tend to be enthusiasts — were enraged at being deceived.   "It's just a blatant disregard and intentional manipulation of the system," said Priya Shah, a San Francisco owner of a 2012 VW diesel Jetta station wagon. "Not only lying to the government, but also lying to your consumer. People buy diesel cars from VW because they feel they are clean diesel cars."

* * *

The affected diesel models include: Jetta (model years 2009-15), Beetle (model years 2009-15), Audi A3 (model years 2009-15), Golf (model years 2009-15), and Passat (model years 2012-15).

* * *

The EPA made its charges by sending Volkswagen a notice of violation of the Clean Air Act. … Volkswagen and Audi vehicles from model years 2009 to 2015 have the software, which uses an algorithm that automatically detects when the vehicle is undergoing pollution tests and changes the way it performs. The EPA said the device senses the testing environment by analyzing a variety of data — steering position, speed, duration of engine operation and barometric pressure.  "These inputs precisely track the parameters of the federal test procedure," the agency wrote in its notice of violation to VW.  The test manipulation "is illegal and a threat to public health," said Cynthia Giles, assistant administrator for the Office of Enforcement and Compliance Assurance. "We expected better from VW."

Volkswagen admitted that the cars contained "defeat devices," after EPA and the state air regulator demanded an explanation for the emission problems.

* * *

3

It is also by far the industry leader in diesel car sales in the U.S. The German automaker last year sold 78,847 diesel passenger vehicles in the U.S., well ahead of its nearest competitor, according to online auto sales company TrueCar. Its corporate sibling Audi sold 15,732 vehicles during the same period.

*VW cheated on U.S. pollution tests for 'clean diesels'*, Los Angeles Times,

September 18, 2015 (available at

http://www.latimes.com/business/autos/la-fi-hy-volkswagen-probe-

20150918-story.html)

3.     On September 22, 2015, it was reported that the scope of the problem

was actually broader and that 11 million Volkswagon diesel cars worldwide were

equipped with software that could be used to cheat on emissions tests. *See*

*Volkswagen Says 11 Million Cars Worldwide Are Affected in Diesel Deception,*

New York Times, September 22, 2015 )(" Volkswagen said on Tuesday there was

a "noticeable deviation" in the emissions that diesels equipped with so-called Type

EA 189 engines produced during road driving, as opposed to a controlled setting.

There are 11 million vehicles with that engine on the road, Volkswagen said. The

cars are known to include Volkswagen Passat, Jetta, Golf and Beetle cars, as well

as the Audi A3") (available at

http://www.nytimes.com/2015/09/23/business/international/ volkswagen-diesel-

car-scandal.html?smprod=nytcore-ipad&smid=nytcore-ipad-share&_r=0).

4.      In turn, this class action challenges Volkswagen's conduct deceiving consumers and regulators, by marketing its Jetta (model years 2009-15), Beetle (model years 2009-15), Audi A3 (model years 2009-15), Golf (model years 2009-15), and Passat (model years 2012-15) diesel vehicles (hereinafter "Defeat Device Vehicles") as environmentally-friendly cars that possessed superior  automotive qualities, namely, extremely high fuel efficiency and performance, with very low emissions, when that was not true. Although Volkswagon successfully marketed these expensive cars as "green", their environmentally-friendly representations were false: Volkswagon did not actually make cars with those desirable and advertised attributes.

5.      Volkswagen accomplished its deception by installing a design device (hereinafter "defeat device") in its diesel vehicles that made the cars it manufactured and sold appear to possess environmentally-friendly qualities – high fuel efficiency and performance – when they actually did not. *See* Exhibit A.  The defeat devices Volkswagon designed and installed operate by switching on the full emissions control systems in Volkswagon's cars *only* when the car is undergoing periodic emissions testing. The technology needed to control emissions from Volkswagon's cars to meet state and federal emissions regulations reduces their performance, limiting acceleration, torque, and fuel efficiency. In order to hide this, the defeat device shuts off most of the emissions control systems in the car

5

once the car has completed its emissions test. This resulted in Volkswagen's cars sending up to 40 times as much pollution into the environment as is allowed under the Clean Air Act and applicable state regulations.

6.    As Cynthia Giles, Assistant Administrator for the Office of Enforcement and Compliance Assurance at the EPA stated: "Using a defeat device in cars to evade clean air standards is illegal and a threat to public health."  Yet that is exactly what Volkswagen did in its 2009-20015 Volkswagen and Audi diesel vehicles. *See* EPA News Release, *EPA, California Notify Volkswagen of Clean Air Act Violations*, September 18, 2015 (available at http://yosemite.epa.gov/opa/admpress.nsf/a883dc3da7094f97852572a00065d7d8/d fc8e33b5ab162b985257ec40057813b!OpenDocument).

7.    The Defeat Device Vehicles that consumers purchased sold at a premium price because of the environmentally-friendly attributes that they were represented to have.  But for Volkswagens' false representations and omissions, consumers in the Class would have paid less for the vehicles they purchased or not purchased the vehicles at all but instead purchased a less expensive alternative.  As a result of Volkswagens' conduct, consumers who purchased these cars were injured and damaged financially. All purchasers overpaid for their vehicles and did not receive the benefit of their contractual bargain.  Current owners now own cars

which are, *inter alia*, of diminished value.  As a result, compensation and other relief is due.

### III.    PARTIES & STANDING

8.    Plaintiff Daniel Carrol is a resident and citizen of Macomb County, Michigan (hereinafter 'Plaintiff').  At relative times, Plaintiff purchased and has owned a 2013 Volkswagen Jetta, 2.0L L4 DOHC 16V DIESEL TURBO, which is one of the Defeat Device Vehicles named in the EPA's Notice of Violation that was sent to Volkswagen.  *See* Exhibit A. Plaintiff purchased the vehicle new at O'Steen Volkswagen, 11401 Philips Hwy, Jacksonville, FL 32256 in or about August 2013.

9.    Volkswagen Group of America, Inc. ("Volkswagen") is a corporation doing business in every U.S. state and the District of Columbia, and is organized under the laws of New Jersey, with its principal place of business at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171. Volkswagen is therefore a citizen of New Jersey and Virginia. *See* 28 U.S.C. § 1332(d)(10).  Volkswagen operates the Volkswagen Electronic Research Laboratory in Belmont, California.

10.    At all relevant times, Volkswagen manufactured, distributed, sold, leased, and warranted the Defeat Device Vehicles under the Volkswagen and Audi brand names throughout the nation. Volkswagen and/or its agents designed the CleanDiesel engines and engine control systems in the Defeat Device Vehicles,

including the "defeat device." Volkswagen also developed and disseminated the owners' manuals and warranty booklets, advertisements, and other promotional materials relating to the Defeat Device Vehicles.

## IV.   JURISDICTION & VENUE

11.    This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.   This Court has personal jurisdiction over Defendant because it conducts business in Michigan, and has sufficient minimum contacts with Michigan.

12.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because Defendant has caused harm to Class members residing in this District.   Plaintiff resides in this District, purchased his Defeat Design Vehicle in this District, and Volkswagen has marketed, advertised, sold, and leased the Defeat Design Vehicles within this District.

## V.   APPLICABLE STATUTES OF LIMITATION ARE TOLLED

### A. Discovery Rule Tolling

13.    Throughout the relevant time period, all applicable statutes of limitation have been tolled by the discovery rule with respect to all claims.

14.    Through the exercise of reasonable diligence, and within any applicable statutes of limitation, Plaintiff and members of the proposed Class could not have discovered that Volkswagen was concealing and misrepresenting the true emissions levels of its vehicles, including but not limited to its use of defeat devices.

15.    As reported in the *New York Times* on September 19, 2015, the International Council on Clean Transportation, a research group, first noticed the difference between Volkswagen's emissions in testing laboratories and in normal use on the road. The International Council on Clean Transportation brought the defeat device issue to the attention of the EPA. The EPA, in turn, conducted further tests on the vehicles, and ultimately uncovered the unlawful use of the defeat device software. Thus, Volkswagen's deception with respect to its CleanDiesel engines, engine control systems, and "defeat devices" was painstakingly concealed from consumers and regulators alike.

16.    Prior to September 18, 2015 Plaintiff and the other Class members could not reasonably discover, and did not know of facts that would have caused a

9

reasonable person to suspect, that Volkswagen intentionally failed to report information within its knowledge to federal and state authorities, its dealerships, or consumers.

17.     Likewise, a reasonable and diligent investigation could not have disclosed that Volkswagen had information in its sole possession about the existence of its sophisticated emissions deception and that it concealed that information, which was discovered by Plaintiff immediately before this action was filed. Plaintiff and other Class members could not have previously learned that Volkswagen valued profits over compliance with applicable federal and state emissions and consumer law.

### B. Fraudulent Concealment

18.     Throughout the relevant time period, all applicable statutes of limitation have been tolled by Volkswagen's knowing and active fraudulent concealment and denial of the facts alleged in this Complaint.

19.     Instead of disclosing its emissions deception, or that the emissions from the Defeat Device Vehicles were far worse than represented, Volkswagen falsely represented that its vehicles complied with federal and state emissions standards, and that it was a reputable manufacturer whose representations could be trusted.

### C.     Estoppel

20.     Volkswagen was under a continuous duty to disclose to Plaintiff and the other Class members the facts that it knew about the emissions from Defeat Device Vehicles, and of those vehicles' failure to comply with federal and state laws.

21.     Although it had the duty throughout the relevant period to disclose to Plaintiff and Class members that it had engaged in the deception described in this Complaint, Volkswagen chose to evade federal and state emissions and clean air standards with respect to the Defeat Device Vehicles, and it intentionally misrepresented its blatant and deceptive lack of compliance with state law regulating vehicle emissions and clean air.

22.     Thus, Volkswagen is estopped from relying on any statutes of limitations in defense of this action.

## VI.   FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS

23.     Volkswagen intentionally designed and sold cars that misled consumers and regulators about the amount of pollution those cars created and the fuel efficiency they produced. Despite touting themselves as an environmentally conscientious company that produced thoughtful cars for people who cared about the environment, Defendant sold expensive cars that produced pollution at levels well above federal and state regulations, and then intentionally and knowingly hid the truth from consumers in the Class about those cars.

11

A.    **Defendant Touts their Diesel Vehicles as Being Fuel Efficient and Good for the Environment.**

24.    For years, Volkswagen has advertised its diesel vehicles as low-emission, fuel-efficient cars. Indeed, this marketing message is at the core of its image in the United States. It has been a successful advertising campaign; Volkswagen has become the largest seller of diesel passenger vehicles in the United States, selling approximately 482,000 diesels in the U.S. since 2009.

25.    Volkswagen's success is based in large part on promoting their diesel cars as "clean" and "green" vehicles. Indeed, being both highly efficient and "clean" are the centerpieces of Defendant's "CleanDiesel" marketing campaign. "CleanDiesel" is in the very name of the vehicles about which Defendant lied.

26.    Volkswagen's attempt to appeal to environmentally conscious customers is evident beyond just the model names and purported attributes of their vehicles. For example, on the "Environment" page of its website, Volkswagen Group of America states that it takes "environmental responsibility very seriously. When it comes to making our cars as green as possible, Volkswagen has an integrated strategy focused on reducing fuel consumption and emissions, building the world's cleanest diesel engines and developing totally new power systems, which utilize new fuel alternatives."

27.    Volkswagen further bolsters its appeal to environmentally conscious customers by emphasizing the fact that the Audi A3 TDI and VW Jetta TDI were

named the 2010 Green Car of the Year and the 2009 Green Car of the Year, respectively.

28.     Volkswagen also launched a "Think Blue" program, which they explained is part of their policy of being "more responsible on the road and more environmentally conscious—not just in our cars."

29.     Beyond merely advertising, Volkswagen supported and directed a website to promote its "clean" diesel technology, www.clearlybetterdiesel.org, which says the technology reduces smog and "meets the highest standards in all 50 states, thanks to ultra-low sulfur diesel (ULSD) fuel and innovative engine technology that burns cleaner."

30.     Volkswagen goes for far as to use the tagline "Truth in Engineering" to promote its Audi brand.

31.     In reality, Volkswagen's engineering, however, was far from "truthful." In truth, Volkswagen designed and sold cars that emit pollutants at high levels, failing state and federal environmental regulations by significant margins.

**B.     Volkswagen Intentionally Hid the Excessive and Illegal Levels of Pollution Emitted from its Cars.**

32.     In contrast to Volkswagen's marketing campaign touting the environmentally friendly attributes of its diesel cars, its diesel cars are unhealthy and unlawful.

33.     In contrast to Volkswagen's marketing campaign touting the

environmentally friendly attributes of its diesel cars, its diesel cars are unhealthy and unlawful.

34.    On September 18, 2015, the EPA issued a Notice of Violation ("NOV").  Exhibit A.  The NOV states that Volkswagen has installed sophisticated software in the Volkswagen and Audi diesel vehicles sold by Volkswagen in the United States that detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the test. At all other times that the vehicle is running, however, the emissions controls are deactivated, meaning that pollution is freely released into the environment at levels that exceed those allowed by federal and state clean air regulators. This software produced and used by Volkswagen is a "defeat device" as defined by the Clean Air Act.  *See* Exhibit A.

35.    Most modern engines, including Volkswagen's "CleanDiesel" engines, use computerized engine control systems to monitor sensors throughout a car's engine and exhaust systems and control operation of the car's systems to ensure optimal performance and efficiency. These functions can include controlling fuel injection, valve and ignition timing, and, as in Volkswagen's "CleanDiesel" engines, operating the engine's turbocharger. The engine control computer can, for example, ensure that the air-to-fuel mixture is correct based on sensor readings such as throttle position, amount of air flowing into the engine, and engine temperature.

14

36.     These engine control computers also receive data from sensors in the car's exhaust system that measure the amounts of chemical substances included in the car's exhaust. That data provides a measure of the engine's operation and efficiency, and is thus used by the engine control computer in operating the car's systems to ensure the desired performance and efficiency.

37.     Because modern cars include these sophisticated computers and sensors throughout the car's systems, emissions testing sometimes uses a car's existing sensors to measure the presence of pollutants and track compliance with EPA and state emissions standards. Emissions testing stations plug a diagnostic device into the car's on-board diagnostics ("OBD II") port and use the car's exhaust sensors during the testing procedure to measure the substances emitted. Some states, instead of or in addition to an OBD II diagnostic device, use a measurement probe inserted into the car's exhaust pipe to measure the chemicals emitted.

38.     Volkswagen programmed the engine control computers in the Defeat Device Vehicles with software that detects when the cars are undergoing emissions testing, and then operates the car's engine and exhaust systems to ensure that emissions comply with EPA pollutant standards. When the car is not being emissions tested—that is, under the vast majority of operating conditions—the engine control systems operate the vehicle in a manner that does not comply with

EPA emissions requirements.

39.     In short, this software allows Volkswagen's diesel vehicles to meet emissions standards in labs or state testing stations, while permitting the vehicles to emit nitrogen oxides (NOx) at up to 40 times the standard allowed under United States laws and regulations during the normal operation of the vehicles.

40.     NOx pollution contributes to nitrogen dioxide, ground-level ozone, and fine particulate matter. Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illness serious enough to send people to the hospital. Ozone and particulate matter exposure have been associated with premature death due to respiratory-related or cardiovascular-related effects. Children, the elderly, and people with pre-existing respiratory illness are at an acute risk of health effects from these pollutants.

41.     The Clean Air Act has strict emissions standards for vehicles and it requires vehicle manufacturers to certify to the EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution. Every vehicle sold in the United States must be covered by an EPA-issued certificate of conformity. Under federal law, cars equipped with defeat devices, which reduce the effectiveness of emissions control systems during normal driving conditions, cannot be certified.

42.     By manufacturing and selling cars with defeat devices that allowed

16

for higher levels of emissions than were certified to the EPA, Volkswagen violated the Clean Air Act, defrauded its customers, and engaged in unfair competition and deceptive and misleading conduct under state and federal laws.

### C. Defendant Has Reaped Significant Profits From Its Conduct Misrepresenting the Attributes of Its Diesel Vehicles.

43.     Defendant charges substantial premiums for the Defeat Device Vehicles. For example, for the 2015 Volkswagen Jetta, the base S model with a gasoline engine has a starting MSRP of $18,780. The base TDI S CleanDiesel, however, has a starting MSRP of $21,640, a price premium of $2,860. The CleanDiesel premium for the highest trim Jetta models with a comparable gasoline engine is substantially higher: The Jetta SE has a starting MSRP of $20,095, while the CleanDiesel TDI SEL MSRP is $26,410, a $6,315 (or 31%) premium.

44.     These premiums occur across all of the vehicles in which Defendant installed its "defeat device" for emissions testing. The table below sets forth the price premium for each comparable base, mid-level, and top-line trim for each affected model:

**CleanDiesel Price Premiums**

| Model | Base | Mid-level | Top-line |
|---|---|---|---|
| VW Jetta | $2,860 | $4,300 | $6,315 |
| VW Beetle | $4,635 | n/a | $2,640 |
| VW Golf | $2,950 | $1,000 | $1,000 |
| VW Passat | $5,755 | $4,750 | $6,855 |
| Audi A3 | $2,805 | $3,095 | $2,925 |

**D.      Volkswagen's Illegal Actions Have Caused Class Members Significant Harm.**

45.      Although the EPA has ordered Defendant to recall the Defeat Device Vehicles and repair them so that they comply with EPA emissions requirements at all times during normal operation, purchasers of the Defeat Device Vehicles have and will continue to suffer significant harm for several reasons. First, Volkswagen will not be able to make the Defeat Device Vehicles comply with emissions standards without substantially degrading their performance characteristics, including their horsepower and their efficiency. As a result, even if Volkswagen is able to make Class members' Defeat Device Vehicles EPA compliant, Class members will nonetheless suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and as advertised.   Second, this will necessarily result in a diminution in value of every Defeat Device Vehicle. Not only did Class members pay too much for cars now worth substantially less, but they will end up paying more to fuel their less efficient cars over the years they own their vehicles.

46.      As a result of Volkswagen's unfair, deceptive, and/or misleading business practices, and its failure to disclose that under normal operating conditions the Defeat Device Vehicles emit 40 times the allowed levels, owners and/or lessees of the Defeat Device Vehicles have suffered losses in money and/or property.

18

47.     The omitted facts were material to reasonable consumers, such as Plaintiff and the Class.   Had Plaintiff and Class members known the truth regarding the "defeat device" at the time they purchased or leased their Defeat Device Vehicles, they would not have purchased or leased those vehicles, but instead obtained an alternative vehicle, or would have paid substantially less for the Defeat Device Vehicles than they did.   Further, when and if Volkswagen recalls the Defeat Device Vehicles and degrades the CleanDiesel engine performance in order to make the Defeat Device Vehicles compliant with EPA standards, Plaintiff and Class members will be required to spend more on fuel and will not benefit from the performance qualities of their vehicles as advertised.

48.     In addition, Defeat Device Vehicles will necessarily be worth less in the used vehicle marketplace because of their decrease in performance and efficiency, which means that owners of Defeat Device Vehicles will not be able to recoup nearly as much value in the future.

49.     Volkswagen's conduct has caused harm to consumers nationwide.

## VII.  PLAINTIFF'S FACTS

50.     Daniel Carroll, is a resident of Chesterfield, Michigan, who purchased a 2013 Volkswagen Jetta, 2.0L L4 DOHC 16V DIESEL TURBO, which is one of the Defeat Device Vehicles named in the EPA's Notice of Violation. Plaintiff purchased the vehicle new at O'Steen Volkswagen, 11401 Philips Hwy,

Jacksonville, FL 32256.

51.     Plaintiff would not have paid as much for the 2013 Volkswagen Jetta, 2.0L L4 DOHC 16V DIESEL TURBO, or likely would not have purchased it at all, if he had known that the emissions were much higher than advertised.

## VIII. CLASS ACTION ALLEGATIONS

52.     Plaintiff brings this action on behalf of himself and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class and subclass (collectively, the "Classes"):

**The Nationwide Class**

All persons or entities who purchased or leased a "Defeat Device Vehicle" in the United States during the Relevant Time Period.  All persons or entities in the United States who are current or former owners and/or lessees of a "Defeat Device Vehicle."  Defeat Device Vehicles, as identified on the EPA's September 18, 2015 Notice of Violation to Volkswagen, are Model Year ("MY") 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Florida Subclass**

 All persons or entities who purchased or leased a "Defeat Device Vehicle"

in Florida during the Relevant Time Period.  Defeat Device Vehicles, as identified on the EPA's September 18, 2015 Notice of Violation to Volkswagen, are Model Year ("MY") 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

53.     Excluded from the Class and Subclass are individuals who have personal injury claims resulting from the "defeat device" in the CleanDiesel system. Also excluded from the Class are Volkswagen and its subsidiaries and affiliates; all employees of Volkswagen; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family and his/her court staff. Plaintiff reserves the right to revise the Class definition based upon information learned through discovery.

54.     The Relevant Time Period dates from the date any of the 2009 model year Defeat Device Vehicles were first sold in the United States and continues through the present.  Alternatively, the Relevant Time Period dates back the date this action was filed the length of the longest statute of limitation applicable for any claims asserted below and continues through the present.

55.     Certification of Plaintiff's claims for class-wide treatment is appropriate because all elements of Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) are

satisfied.  Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

56.     Numerousity:   All requirements of Fed. R. Civ. P. 23(a)(1) are satisfied.  The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiff is informed and believes that there are not less than hundreds of thousands of members of the Class, the precise number of Class members is unknown to Plaintiff, but may be ascertained from Volkswagen's records. Further, the class is ascertainable.  Class members are able to be identified through objective means, including Defendants' sales, warranty and repair records.   Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

57.     Commonality and Predominance:  All requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) are satisfied.  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

(a)          Whether Volkswagen engaged in the conduct alleged herein;

(b)          Whether Volkswagen designed, advertised, marketed,

distributed, leased, sold, or otherwise placed Defeat Device Vehicles into the stream of commerce in the United States, including the state of Florida;

(c)     Whether the statements in the EPA's Notice of Violation (Exhibit A) are true;

(d)     Whether the CleanDiesel engine system in the Defeat Device Vehicles contains a defect in that it does not comply with EPA requirements;

(e)     Whether the CleanDiesel engine system in the Defeat Device Vehicles contains a defect in that it does not comply with EPA requirements;

(f)     Whether the CleanDiesel engine systems in Defeat Device Vehicles can be made to comply with EPA standards without substantially degrading the performance and/or efficiency of the Defeat Device Vehicles;

(g)     Whether Volkswagen knew about the "defect device" and, if so, how long Volkswagen has known;

(h)     Whether Volkswagen designed, manufactured, marketed, and distributed Defeat Device Vehicles with a "defeat device";

(i)     Whether Volkswagen's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

(j)     Whether Plaintiff and the other Class members overpaid for their Defeat Device Vehicles;

(k)     Whether Defendant's conduct was intentional and willful;

23

(l)       Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

(m)       Whether Plaintiff and the other Class members are entitled to damages, restitution and/or other relief and, if so, in what amount.

58.     In contrast to Volkswagen's marketing campaign touting the environmentally friendly attributes of its diesel cars, its diesel cars are unhealthy and unlawful.

59.     Typicality: All requirements of Fed. R. Civ. P. 23(a)(3) are satisfied. Plaintiff is a member of the Class and Subclass having purchased and owned a Defeat Device Vehicle at relevant times.  Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Volkswagen's wrongful conduct as described within.

60.     Adequacy of Representation:  All requirements of Fed. R. Civ. P. 23(a)(4) are satisfied.  Plaintiff is an adequate Class representative because he is a member of the Class and his interests do not conflict with the interests of the other members of the Class and Subclass that he seeks to represent.   Plaintiff is committed to pursuing this matter for the Class and Subclass with the Classes'/Subclasses' collective best interests in mind.   Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff

intends to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiff and the undersigned counsel.

61.     Declaratory and Injunctive Relief:  All requirements of Fed. R. Civ. P. 23(b)(2) are satisfied.  Volkswagen has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

62.     Predominance and Superiority:  All requirements of Fed. R. Civ. P. 23(b)(3) are satisfied.   As described above, common issues of law or fact predominate over individual issues.   Resolution of those common issues in Plaintiff's individual case will also resolve them for the Class's claims.   In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Volkswagen, so it would be impracticable for members of the Class to individually seek redress for Volkswagen's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory

25

judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## IX.    CAUSES OF ACTION

### COUNT I
### Breach of Contract

63.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

64.     Plaintiff brings this Count on behalf of the Class and Subclass.

65.     Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the "defeat device" and/or defective design as alleged herein, caused Plaintiff and the other Class members to make their purchases or leases of their Defeat Device Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other Class members would not have purchased or leased these Defeat Device Vehicles, would not have purchased or leased these Defeat Device Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and the "defeat device." Accordingly, Plaintiff and the other Class members overpaid for their Defeat Device Vehicles and did not receive the benefit of their bargain.

66.     Each and every sale or lease of a Defeat Device Vehicle constitutes a contract between Volkswagen and the purchaser or lessee. Volkswagen breached these contracts by selling or leasing Plaintiff and the other Class members defective Defeat Device Vehicles and by misrepresenting or failing to disclose the existence of the "defeat device" and/or defective design, including information known to Volkswagen rendering each Defeat Device Vehicle less safe and emissions compliant, and thus less valuable, than vehicles not equipped with CleanDiesel engine systems and "defeat devices."

67.     Volkswagen failed to deliver to Plaintiff and the Class what it contractually promised to provide in exchange for the valid consideration they paid, breaching Class Member's contracts.

68.     As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages and relief allowed by law.

## COUNT II
## Magnuson - Moss Act (15 U.S.C. §§ 2301, *et seq*.)
## Implied Warranty

69.     Plaintiff incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

70.     Plaintiff asserts this cause of action on behalf of themselves and the

other members of the Class and Subclass.

71.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 2301(3).

72.     Volkswagen's Defeat Device Vehicles are a "consumer product," as that term is defined in 15 U.S.C. § 2301(1).

73.     Plaintiff and Class members are "consumers," as that term is defined in 15 U.S.C. § 2301(3).

74.     Volkswagen is a "warrantor" and "supplier" as those terms are defined in 15 U.S.C. § 2301(4) and (5).

75.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

76.     Volkswagen provided Plaintiff and Class members with "implied warranties," as that term is defined in 15 U.S.C. § 2301(7).

77.     Volkswagen has breached these implied warranties as described in more detail within. Without limitation, Volkswagen's Defeat Device vehicles are defective, as described above, which resulted in the problems and failures also described within.

78.     By Volkswagen's conduct as described herein, including Volkswagen's knowledge of the defects inherent in the vehicles and its action, and inaction, in the face of the knowledge, Volkswagen has failed to comply with its

obligations under its written and implied promises, warranties, and representations.

79.     In its capacity as a warrantor, and by the conduct described herein, any attempts by Volkswagen to limit the implied warranties in a manner that would exclude coverage of the defective software and system is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective software and system is null and void.

80.     All jurisdictional prerequisites have been satisfied.

81.     Plaintiff and members of the Class are in privity with Volkswagen in that they purchased the software and system from Volkswagen or its agents.

82.     As a result of Volkswagen's breach of implied warranties, Plaintiff and the Class / Subclass members are entitled to revoke their acceptance of the vehicles, obtain damages and equitable relief, and obtain costs pursuant to 15 U.S.C. §2310.

**COUNT III**
**Violation of Florida Deceptive**
**and Unfair Trade Practices Act ("FDUTPA")**

83.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

84.     Plaintiff brings this Count on behalf of the Subclass.

85.     Florida's Deceptive and Unfair Trade Practices Act (F.S. §501.201 *et seq.*) was enacted to give consumers stronger legal protection against commercial

wrongdoing.   F.S. § 501.204 prescribes unlawful acts and practices, as follows: "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

86.     FDUTPA permits any person who has suffered loss as a result of a violation of the Act to bring an action for damages, declaratory relief, injunctive relief, as well as reasonable attorneys' fees and costs. F.S. § 501.204.

87.     Volkswagen's conduct, as described herein, was and is in violation of the FDUTPA. Volkswagen's conduct violates the FDUTPA in at least the following ways:

(a)         By knowingly and intentionally concealing from Plaintiff and the other Class members that the Defeat Device Vehicles suffer from a design defect while obtaining money from Plaintiff and the Class;

(b)         By marketing Defeat Device Vehicles as possessing functional and defect-free, EPA compliant CleanDiesel engine systems;

(c)         By purposefully installing an illegal "defeat device" in the Defeat Device Vehicles to fraudulently obtain EPA and CARB certification and cause Defeat Device Vehicles to pass emissions tests when in truth and fact they did not pass such tests.

88.     Volkswagen intentionally concealed and suppressed material facts

concerning the quality and character of the Defeat Device Vehicles. As alleged in this Complaint, Volkswagen engaged in deception to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutants, which contributes to the creation of ozone and smog.

89.   The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Defendant's intended: vehicles passed emissions certifications by way of deliberately induced false readings. Reportedly, Volkswagen's deliberate, secret deception resulted in noxious emissions from these vehicles at 40 times applicable standards.

90.   Plaintiff and Class members reasonably relied upon Volkswagen's false representations. They had no way of knowing that Volkswagen's representations were false and gravely misleading. As alleged herein, Volkswagen employed extremely sophisticated methods of deception. Plaintiff and Class members did not, and could not, unravel Volkswagen's deception on their own.

91.   Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its deception to regulators or consumers, including Plaintiff and Class members. Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including

certified previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that its vehicles likewise comply with applicable laws and regulations.

92.     Volkswagen's false representations were material to consumers like Plaintiff, both because they concerned the quality of the Defeat Device Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Volkswagen well knew, its customers, including Plaintiff and Class members, highly valued that the vehicles they were purchasing or leasing were clean diesel cars, and they paid accordingly.

93.     Volkswagen had a duty to disclose the emissions deception it engaged in with respect to the vehicles at issue because knowledge of the deception and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its deception, and because Volkswagen knew the facts were unknown to or reasonably discoverable by Plaintiff or Class members.

94.     Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as clean diesel cars, or cars

32

with clean diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions deception, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue.

95.     Having volunteered to provide information to Plaintiff and the Class, Volkswagen had the duty to disclose the entire truth. These omitted and concealed facts were material because they directly affect the value of the Defeat Device Vehicles purchased or leased by Plaintiff and Class members. Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. Volkswagen represented to Plaintiff and Class members that they were purchasing clean diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had thoroughly subverted the testing process.

96.     Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost

Volkswagen money, and it did so at the expense of Plaintiff and Class members.

97.    On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiff and Class members by concealing material information regarding the emissions qualities of its referenced vehicles and its emissions deception.

98.    Plaintiff and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and Class members' actions were justified. Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or Class members.

99.    The facts concealed and omitted by Volkswagen to Plaintiff and the other members of the Class are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Defeat Device Vehicles or pay a lower price. Had Plaintiff and the other members of the Class known about the defective nature of the Defeat Device Vehicles, they would not have purchased or leased the Defeat Device Vehicles or would not have

paid the prices they paid.

100. Because of the concealment and/or suppression of the facts, Plaintiff and Class members have sustained damages because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies. Had Plaintiff and Class members been aware of Volkswagen's emissions deceptions with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiff and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

101. The value of Plaintiff's and Class members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions deception, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiff's and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Defeat Device Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

102. Volkswagen concealed and suppressed material facts concerning

what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales above the trust that Plaintiff and Class members placed in its representations.

103.    Volkswagen's misrepresentations and omissions alleged herein caused Plaintiff and the other Class members to make their purchases or leases of their Defeat Device Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other Class members would not have purchased or leased these Defeat Device Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain CleanDiesel engine systems that failed to comply with EPA emissions standards.

104.    Accordingly, Plaintiff and the other Class members have suffered injury in fact including lost money or property as a result of Volkswagen's misrepresentations and omissions.

105.    Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Volkswagen under FDUTPA.

106.    Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Volkswagen from continuing its deceptive practices and to restore to Plaintiff and members of the Class any money it acquired by its

conduct, including damages restitution and/or restitutionary disgorgement, as provided in F.S 501.211 and/or other provisions of FDUTPA and law, and for such other relief set forth below.

## COUNT IV
## Breach of Express Warranty

107.    Plaintiff incorporates by reference every prior and subsequent allegation of this Complaint as if fully restated here.

108.    Plaintiff brings a cause of action against Volkswagen for breach of express warranty on behalf of themselves and the Subclass.

109.    Volkswagen made numerous representations, descriptions, and promises to Plaintiff and Class members regarding the performance and emission controls of its diesel vehicles.

110.    Volkswagen, however, knew or should have known that its representations, descriptions, and promises were false. Volkswagen was aware that it had installed defeat devices in the vehicles it sold to Plaintiff and Class members.

111.    Plaintiff and Class members reasonably relied on Volkswagen's representations in purchasing "clean" diesel vehicles. Those vehicles, however, did not perform as was warranted. Unbeknownst to Plaintiff, those vehicles included devices that caused his emission reduction systems to perform at levels worse than advertised. Those devices are defects. Accordingly, Volkswagen breached its express warranty by providing a product containing defects that were never

disclosed to the Plaintiff and Class members.

112.    As a direct and proximate result of Volkswagen's false and misleading representations and warranties, Plaintiff and Class members suffered significant damages and seek the relief described below.

## COUNT V
## Breach of Implied Warranty

113.    Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

114.    Plaintiff brings this cause of action against Volkswagen for breach of implied warranty on behalf of himself and the Subclass.

115.    Volkswagen made numerous representations, descriptions, and promises to Plaintiff and Class members regarding the functionality of Volkswagen's "clean" diesel technology.

116.    Plaintiff and Class members reasonably relied on Volkswagen's representations in purchasing the Defeat Device vehicles.

117.    As set forth throughout this Complaint, Volkswagen knew that its representations, descriptions and promises regarding its diesel engines were false.

118.    When Plaintiff and Class members purchased Volkswagen's diesel vehicles, they did not conform to the promises or affirmations of fact made in Volkswagen's promotional materials, including that the vehicles were designed to meet the most demanding environmental standards. Instead, as alleged above,

those vehicles were designed to cheat those standards, and the vehicles emitted far higher levels of pollution than promised.

119.   Accordingly, the Defeat Device Vehicles failed to conform to Volkswagen's implied warranty regarding their functionality.

120.   As a direct and proximate result of Volkswagen's false and misleading representations and warranties, Plaintiff and Class members suffered significant injury when Volkswagen sold them cars that, it is now clear, are worth far less than the price Plaintiff and Class members paid for them. Accordingly, Plaintiff and the Class seek the relief described below.

## COUNT VI
## Unjust Enrichment / Money Had and Received

121.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

122.   Plaintiff brings this count on behalf of themselves and, where applicable, the Subclass.

123.   Plaintiff and members of the Class conferred a benefit on Volkswagen by, *inter alia*, using (and paying for) its vehicles.

124.   Volkswagen has retained this benefit, and know of and appreciate this benefit.

125.   Volkswagen was and continues to be unjustly enriched at the expense of Plaintiff and Class members.  It is inequitable for Volkswagon to retain the

benefits conferred by Plaintiff and the Class under the circumstances.

126.    Volkswagen should be required to disgorge this unjust enrichment.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Class respectfully request that the Court enter judgment in their favor and against Volkswagen, as follows:

A.    Certification of the proposed Class and Subclass, including appointment of Plaintiff's counsel as Class Counsel;

B.    An order temporarily and permanently enjoining Volkswagen from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.    Injunctive relief in the form of a recall or free replacement program;

D.    Costs, restitution, damages, and disgorgement in an amount to be determined at trial;

E.    Revocation of acceptance;

F.    Damages under the Magnuson-Moss Warranty Act;

G.    For treble and/or punitive damages as permitted by applicable laws;

H.    An order requiring Volkswagen to pay both pre- and post-judgment interest on any amounts awarded;

I.    An award of costs and attorneys' fees; and

J.      Such other or further relief as may be appropriate.

## XI. DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all counts where jury trial is permitted.

Respectfully submitted,

Dated: September 23, 2015          */s/ Caleb Marker*
                                   Caleb Marker, MI Bar No. (P70963)
                                   Zimmerman Reed, L.L.P.
                                   555 E. Ocean Blvd.
                                   Suite 500
                                   Long Beach, CA 90802
                                   Telephone:  (877) 500-8780
                                   Facsimile:   (877) 500-8781
                                   Email: caleb.marker@zimmreed.com


                                   Hart L. Robinovitch,
                                   AZ Bar No. 020910
                                   Zimmerman Reed, L.L.P.
                                   14646 N. Kierland Blvd., Suite 145
                                   Scottsdale, AZ  85254
                                   Telephone:  (480) 348-6400
                                   Facsimile:   (480) 348-6415
                                   Email:
                                   hart.robinovitch@zimmreed.com


                                   Brian Gudmondson
                                   (To be admitted *Pro Hac Vice*)
                                   Zimmerman Reed, L.L.P.
                                   651 Nicollet Mall, Suite 501
                                   Minneapolis, MN  55402
                                   Telephone:  (612) 341-0400
                                   Facsimile:   (612) 341-0844
                                   Email:
                                   brian.gudmundson@zimmreed.com

41